IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| AMERICAN RESCUE WORKERS, INC., a District of Columbia corporation, and AMERICAN RESCUE WORKERS, a Pennsylvania corporation, | Civil Action No. **24-cv-136** |
| *Plaintiffs*, | |
| v. | **VERIFIED COMPLAINT** |
| GLORY MOUNTAIN MINISTRIES, a North Carolina corporation, BYRON MARTIN, SHAHRZAD MARTIN, ALMA DYSON, PAUL E. MARTIN, JR., VIRGINIA NOTTINGHAM, and WANDA M. RAWLINGS | |
| *Defendants*. | |

Plaintiffs American Rescue Workers, Inc., a District of Columbia corporation, and American Rescue Workers, a Pennsylvania corporation, by and through undersigned counsel, allege as and for their Complaint as follows:

**NATURE OF THE ACTION**

1.      This is an action for certain claims wherein American Rescue Workers, a Christian church, ("ARW National") and its affiliate American Rescue Workers, a nonprofit corporation in the District of Columbia ("ARW DC") seek a judicial declaration that (1) all ARW DC assets, including, but not limited to, 590 acres of real property located in Morganton, Burke County, North Carolina located at 1616 Huffman Bridge Road, Burke County, North Carolina. (the "North Carolina Property"), are owned by and/or belong to ARW DC; (2) Defendants Glory Mountain Ministries, Byron Martin, Shahrzad (Scherry) Martin, Alma Dyson, Paul E. Martin, Jr., Virginia Nottingham, and Wanda M. Rawlings have no right or claim to control ARW DC; and

(3) Defendants Glory Mountain Ministries, Byron Martin, Shahrzad (Scherry) Martin, Alma Dyson, Paul E. Martin, Jr., Virginia Nottingham, and Wanda M. Rawlings have no right or claim to any assets owned by and/or belonging to ARW DC, including the Property.

2.      This action also seeks certain amounts owed by the Defendants to ARW National and ARW DC concerning the illegal conversion of ARW National and/or ARW DC assets, the fraudulent conveyance of the North Carolina Property, and an accounting of the Defendants' use, disposal, and/or waste of ARW National and ARW DC assets.

## JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

4.      Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Burke County, North Carolina. Additionally, the real property at issue is located in Burke County, North Carolina.

5.      This Court is authorized to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and is authorized to grant preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 1651(a) and Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

6.      Plaintiff American Rescue Workers, Inc. is a nonprofit corporation and a church organized and existing under the laws of the District of Columbia.

7.      Plaintiff American Rescue Workers is a nonprofit corporation and church organized and existing under the laws of Pennsylvania. ARW National maintains its principal office in Pennsylvania.

2

8.	Defendant Glory Mountain Ministries is a nonprofit corporation, organized in 2018 and existing under the laws of North Carolina. Defendant Glory Mountain Ministries maintains its principal office in North Carolina. Glory Mountain Ministries neither has nor claims an affiliation with either ARW National or ARW DC.

9.	Defendant Byron Martin is a real person residing in North Carolina. At the time of the purchase of the property at issue by ARW DC, Byron Martin was an officer of ARW DC.

10.	Defendant Shahrzad (Scherry) Martin is a real person residing in North Carolina. At the time of the purchase of the property at issue by ARW DC, Scherry Martin was an officer of ARW DC.

11.	Upon information and belief, Defendant Alma Dyson is a real person residing in Maryland.  Alma Dyson has held herself out to be a current board member of ARW DC, including by executing a deed invalidly and illegally transferring the North Carolina Property from ARW DC to Defendant Glory Mountain Ministries.

12.	Upon information and belief, Defendant Paul E. Martin, Jr. is a real person residing in North Carolina.  Paul E. Martin, Jr. has held himself out to be a current board member of ARW DC, including by executing a deed invalidly and illegally transferring the North Carolina Property from ARW DC to Defendant Glory Mountain Ministries.

13.	Upon information and belief, Virginia Nottingham is a real person residing in Maryland.  Virginia Nottingham has held herself out to be a current board member of ARW DC, including by executing a deed invalidly and illegally transferring the North Carolina Property from ARW DC to Defendant Glory Mountain Ministries.

14.     Upon information and belief, Wanda M. Rawlings is a real person residing in North Carolina. Wanda M. Rawlings has held herself out to be a current board member of ARW DC, including by executing a deed invalidly and illegally transferring the North Carolina Property from ARW DC to Defendant Glory Mountain Ministries.

**STATEMENT OF FACTS**

15.     ARW National is a Christian church organization, established in 1884, with community churches and charities located throughout the United States.

16.     ARW National is an ecclesiastical entity that conducts the civil affairs of American Rescue Workers through its religious corporation established in Pennsylvania in 1913.

17.     The Internal Revenue Service (IRS) recognizes ARW National as a tax-exempt church, pursuant to Internal Revenue Code § 501(c)(3). ARW National, as the central organization, holds a group exemption letter for its associated subordinate community churches and charities. ARW National's community churches and charities are tax exempt through the central organization's group exemption determination letter. This exemption determination letter was originally issued in 1964 and remains active and valid, affirmed as recently as August 9, 2005.

18.     ARW National's subordinate community churches and associated charities may be incorporated under the religious or nonprofit corporation provisions of their local states.

19.     In the District of Columbia, ARW National's affiliated and subordinate local organization is ARW DC, which was formed in 1958.

20.     The governance, both religious and civil, of these subordinate community corporations, including ARW DC, and the central church are inextricably intertwined with express Constitutions and Bylaws, contained in the Articles of Incorporation, which dictate the corporation's structure and governance to reflect the religious polity of ARW National.

4

21.     ARW DC's Constitution and Bylaws were expressly created by ARW National, and state that ARW DC is "organized for the reaching and uplifting of all sections of the people, and bringing them to the immediate knowledge and active service of God." (Articles of Incorporation, Article I).

22.     ARW DC, like all the subordinate community churches and charities of ARW National, is managed by Commissioned Officers of ARW National. Moreover, ARW DC must remain in relationship to evangelical churches, which themselves are directly related to ARW National (Articles of Incorporation, Article VI).

23.     The Articles of Incorporation further incorporate into the documents of the civil corporation the cardinal doctrines of the American Rescue Workers, consisting of ten points of belief to be followed (Articles of Incorporation, Article IX) and establishing the sacraments of the church (Articles of Incorporation, Article XIII).

24.     The Articles of Incorporation expressly provide that management of all property and goods is governed by ARW National's religious governing document – the Manual of the American Rescue Workers. Specifically, Article XVII provides:

> All property, real, personal or mixed, which shall be bequeathed, devised or conveyed to said American Rescue Workers or any of the corporations in any state, city, or town or to any of the American Rescue Workers' religious or social service programs, will be held, and taken or insured, subject to the control, management and disposition of said Board of Managers, and said Board of Managers is subject to the rules and regulations as outlined in the manual of the American Rescue Workers. . . ." (Articles of Incorporation, Article XVII).

25.     Defendant Byron E. Martin was designated as a Commissioned Officer under the ecclesiastical authority of the American Rescue Workers church in 2001 and subsequently ordained in 2004.

5

26.     Beginning on or about 2001, through and by the express authority of ARW National, Byron Martin was designated as the Executive Director and a corporate director of ARW DC.

27.     As Executive Director for ARW DC, Byron Martin's actions were authorized by ARW DC's Constitution, Bylaws, and Articles of Incorporation, as promulgated by and through ARW National and, as such, inextricably intertwined with ARW National's Constitution, Bylaws, and Articles of Incorporation.

28.     In his capacity as Executive Director for ARW DC, Byron Martin was empowered only to act in the interests of ARW DC, as the local church and affiliate of ARW National.

29.     During his tenure as Executive Director of ARW DC, as part of its ministry, ARW DC provided alcohol and addiction recovery assistance through the church and in and around the District of Columbia.

30.     In 2014, Byron Martin alleged, to ARW National, that there was insufficient need for those alcohol and addiction recovery services and the church's associated ministry. As an alternative, Byron Martin proposed relocating ARW DC's church and charity operations to North Carolina, claiming such operations would be more relevant there.

31.     In support of his proposal, Byron Martin presented a business plan to ARW National entitled "American Rescue Workers of North Carolina."

32.     "American Rescue Workers of North Carolina" was not approved by ARW National.

33.     In 2016, Byron Martin presented a written proposal to ARW National for "Redemption Acres of the American Rescue Workers." Byron Martin's plan detailed a proposed

6

operation of an ARW church with ministries consisting of a farm, retreat center, addiction counseling, and mentoring at the North Carolina Property.

34.     "Redemption Acres of the American Rescue Workers" sought to extend the operations of ARW National and ARW DC to the North Carolina Property, consistent with the prior operation of ARW DC under the direct purview of ARW National.

35.     Following receipt of "Redemption Acres of the American Rescue Workers," ARW National had extensive internal discussions regarding the proposal's viability and aspects. Following that detailed internal review, ARW National approved ARW DC's plan to sell certain District of Columbia properties owned by ARW DC so that it could purchase the North Carolina Property with the proceeds of the sales to further the interests of and benefit ARW National.

36.     Pursuant to the governing documents of both ARW National and ARW DC, ARW DC was and is required to receive ARW National's authorization to sell any property owned by, belonging to, and/or titled in the name of ARW DC.

37.     Consistent to and following ARW National's approval, ARW DC sold two of its properties. Upon information and belief, the first property (the "H Street Property") was sold on February 2, 2016, in the amount of $2,300,000.00. Upon information and belief, the second property (the "11th Street Property") was sold on January 14, 2016, in the amount of $800,000.00.

38.     ARW National's decision to acquire the North Carolina Property, in the name of ARW DC, was expressly and solely for the purpose of operating an ARW church and ministry on the premises.

39.     ARW National would not have sanctioned the sale of ARW DC property, nor the purchase of the North Carolina Property for any other purpose. Moreover, ARW National

and ARW National's governing documents would not have sanctioned any such sale or purchase contrary to the stated ministry and purpose of ARW National.

40.     On March 8, 2017, as part of the transaction to obtain the North Carolina Property, a Special Warranty Deed was issued to ARW DC for the North Carolina Property. As Executive Director, Byron Martin was the authorizing officer for ARW DC in this transaction. A copy of the Deed is attached hereto as **Exhibit A**.

41.     ARW DC purchased the North Carolina Property for $1,700,500.00. The funds used to purchase the North Carolina Property came from its sale of ARW DC property, authorized by and through ARW National. But for the sale of ARW DC property, which was intended to further the interests of and benefit ARW National, ARW DC would not have been able to afford the North Carolina Property.

42.     Following the purchase of the North Carolina Property, Byron Martin failed to account for the remaining proceeds of the sale of certain ARW DC property, including, but no limited to, the sale of the H Street Property and the 11th Street Property.

43.     Upon information and belief, Plaintiffs reasonably believe the remaining proceeds from the sale of certain ARW DC property is considerable and potentially exceeds one million dollars ($1,000,000.00).

44.     At all times, the North Carolina Property has been insured through ARW National's church group insurance policy.

45.     On July 29, 2019, ARW DC sold the last of its properties in the D.C. area. This property was located at 716 Ritchie Road, Capitol Heights, Maryland and was sold for $6,300,000.

46.    The sale of 716 Ritchie Road, Capitol Heights, Maryland was expressly authorized by ARW National and was sold with the express intent and sole authorization for use for the benefit of ARW National, ARW DC, and for ministries and activities consistent with the governing documents of ARW National.

47.    ARW National would not have sanctioned the sale of 716 Ritchie Road, Capitol Heights, Maryland if ARW National knew the Defendants would fail to account for the proceeds and use the proceeds contrary to ARW National's governing documents and directives.

48.    Following the sale of 716 Ritchie Road, Capitol Heights, Maryland, as with the proceeds from other ARW DC property, Byron Martin failed to account for the proceeds to ARW National.

49.    Shortly after the final property sale for ARW DC, Byron Martin ceased all communications with ARW National.

50.    Byron Martin also ceased participating in the governance of ARW DC and failed to maintain the corporate registrations for ARW DC, in clear breach of his fiduciary obligation as an officer of ARW DC.

51.    Upon information and belief, Byron Martin abandoned all obligations as Executive Director of ARW DC, and began to act against the interests of ARW National and ARW DC, including allowing ARW DC's corporate status to lapse. Moreover, Byron Martin made no attempt to inform ARW National of any impending deadline to maintain ARW DC's corporate status. Indeed, Byron Martin, Shahrzad Martin, Alma Dyson, Paul E. Martin, Jr., Virginia Nottingham and Wanda M. Rawlings abandoned their responsibilities for ARW DC and acted contrary to their obligations to ARW National and ARW DC, including their obligation as Directors to maintain ARW DC's corporate status.

52.     In 2019, 2020 and 2021, Byron Martin failed to respond to the ARW National annual auditor for the church's workers' compensation insurance, risking cancellation of the entire church denomination's workers' compensation insurance.

53.     In January 2023, ARW National learned of ARW DC's lapsed corporate status. On or about February 13, 2023, ARW National completed the required filings and payments to reinstate the corporation to active status. As part of re-establishing ARW DC, ARW National appointed a new Board of Managers consistent with its governing documents, including the Constitution and Bylaws, and in so doing, removed Byron Martin, Shahrzad Martin, Alma Dyson, Paul E. Martin, Jr., Virginia Nottingham and Wanda M. Rawlings from their prior positions, if any, in ARW DC.

54.     Neither Byron Martin, Shahrzad Martin, Alma Dyson, Paul E. Martin, Jr., Virginia Nottingham nor Wanda M. Rawlings participated in re-establishing ARW DC. Neither Byron Martin, Shahrzad Martin, Alma Dyson, Paul E. Martin, Jr., Virginia Nottingham nor Wanda M. Rawlings were appointed to the new Board of Managers, and accordingly none of these individuals has the authority to act on behalf of ARW DC.

55.     ARW National subsequently discovered that on August 17, 2018, Byron Martin filed Articles of Incorporation for a North Carolina nonprofit corporation called Glory Mountain Ministries and named himself as the registered agent.

56.     On April 10, 2020, Glory Mountain Ministries received an Internal Revenue Service tax exemption determination that it was recognized as a church.

57.     On several publicly available charity watchdog services, Glory Mountain Ministries identifies as an independent organization, not affiliated with a national group of organizations.

10

58. On several social media platforms and internet websites, including his own Facebook profile page and in YouTube clips, Byron Martin identifies himself as the pastor of Glory Mountain Ministries.

59. Glory Mountain Ministries is not affiliated with ARW National or ARW DC, is not led by ordained ministers or Commissioned Officers of ARW National, and is not in compliance with the requirements of ARW National, including, but not limited to, the requirement local churches follow the Manual of the American Rescue Workers.

60. Byron Martin failed to pay the insurance premiums to the church group plan for the North Carolina Property for 2021, 2022, and 2023. ARW National made each of these payments using its own assets.

61. Despite several attempts by ARW National and ARW DC to contact Byron Martin during this time, he failed to respond.

62. On December 12, 2022, ARW National sent a formal demand to Byron Martin, requesting a formal response regarding the activities of Glory Mountain Ministries, its unauthorized use of the North Carolina Property, and the status of all assets of ARW DC.

63. In 2023, Byron Martin purchased a vehicle, titled to Glory Mountain Ministries, and attempted to add it to ARW National's automobile fleet insurance policy. This attempted addition was denied by the insurer as a vehicle not properly held by an ARW National affiliate and was thus ineligible for coverage under the policy.

64. Subsequently, ARW National, through counsel, notified Byron Martin that he was required to vacate the North Carolina Property, that he was no longer affiliated with either ARW National or ARW DC, that he had no legal claim to the North Carolina Property, and that

11

his and Glory Mountain Ministries continued use of the North Carolina Property constituted an illegal trespass under North Carolina law.

65.    Through counsel, Byron Martin denied ARW National's demand and instead asserted ownership over the North Carolina Property and that he was free to sell or transfer it without the approval of ARW National.

66.    On or about October 4, 2023, to protect its interest and prevent the loss of critical assets, including the North Carolina Property, ARW National and ARW DC filed a Verified Complaint for Declaratory and Injunctive Relief (the "DC Complaint") in the United States District Court for the District of Columbia (1:23-CV-02953).

67.    The gravamen of the DC Complaint was similar to the allegations contained herein, seeking a declaration that Byron Martin, Shahrzad Martin, and Glory Mountain Ministries (1) have no right or claim to control ARW DC; (2) have no right or claim to any of the assets of ARW DC and ARW National; and (3) be enjoined from attempting to exert any control over ARW DC and/or over assets of ARW DC and ARW National.

68.    The DC Complaint sought to stay any further disposition, depletion, or encumbrance of ARW DC assets, pending a resolution concerning the control of ARW DC and its assets.

69.    In conjunction with the filing of the DC Complaint, and pursuant to North Carolina law, Plaintiffs filed a Notice of Lis Pendens for the North Carolina Property. Given concerns about the potential for Byron Martin, Shahrzad Martin, and/or Glory Mountain Ministries to sell or transfer the North Carolina Property, Plaintiffs placed any potential purchasers on notice regarding the disputed ownership of the North Carolina Property.

12

70.     Byron Martin, Shahrzad Martin, and Glory Mountain Ministries retained counsel in the District of Columbia and sought to dismiss the case for jurisdictional and venue reasons – specifically, arguing that North Carolina (not the District of Columbia) was the proper venue for the claims asserted in the DC Complaint.

71.     To avoid a protracted jurisdictional and venue dispute with Defendants – and to move forward to a determination on the merits regarding control of ARW DC and its assets – Plaintiffs agreed to voluntarily dismiss, without prejudice, the DC Complaint and file a new action in the United States District Court for the Western District of North Carolina.  The intent and purpose of the voluntary dismissal was communicated to Byron Martin, Shahrzad Martin, and Glory Mountain Ministries, via their counsel, and they stipulated to the dismissal of the DC action without prejudice.

72.     On or about December 1, 2023, Plaintiffs filed their Stipulation of Dismissal without Prejudice.

73.     Following the filing of the Stipulation of Dismissal without Prejudice of the DC Complaint, Plaintiffs, consistent with North Carolina law, filled a Cancellation of the Notice of Lis Pendens for the North Carolina Property and served said cancellation on Byron Martin, Shahrzad Martin, and Glory Mountain Ministries.

74.     On December 22, 2023, ARW National held a meeting of its Board of Managers during which it passed several motions including but not limited to those which: (1) revoked the ecclesiastical office of Byron Martin and Shahrzad Martin as commissioned officers and ministers of ARW National, effective January 1, 2023, based on immoral and improper actions; (2) revoked the qualifications of Byron Martin and Shahrzad Martin to serve as executive directors or board members of ARW DC, effective January 1, 2023; (3) prohibited ARW DC from

13

transferring or encumbering any of its real or personal property; and (4) prohibited Byron Martin, Shahrzad Martin, and Glory Mountain Ministries from using any ARW DC assets, real or personal.

75. On December 22, 2023, ARW DC held a meeting of its Board of Directors during which it passed several motions including but not limited to those: (1) taking notice of ARW National's revocation of the ecclesiastical office of Byron Martin and Shahrzad Martin as commissioned office and ministers of ARW National, effective January 1, 2023; (2) taking notice of constitution of the current ARW DC Board following the removal of Byron Martin and Shahrzad Martin; (3) prohibiting Byron Martin and Shahrzad Martin from acting on behalf of ARW DC or holding themselves out as representatives of ARW DC; (4) affirming ARW DC's independence from and non-affiliation with or endorsement of Glory Mountain Ministries; and (5) prohibiting Byron Martin, Shahrzad Martin, and Glory Mountain Ministries from using any ARW DC assets, real or personal, including occupying or using the North Carolina Property for any purpose.

76. Also on December 22, 2023, Plaintiffs' counsel sent Byron Martin, Shahrzad Martin, and Glory Mountain Ministries, via their counsel in Viriginia and North Carolina, a letter advising that ARW National and ARW DC expressly prohibited the sale, gift, conveyance, encumbrance, or any other transfer of any real or personal property owned by ARW DC or ARW National, including, but not limited to, the North Carolina Property.

77. In addition to the clear abandonment of ARW DC by Byron Martin and Shahrazad Martin, as well as their termination and cessation from any association with and leadership in ARW DC, on January 6, 2024, ARW National sent Byron Martin and Shahrzad Martin letters informing them of the actions of ARW National and ARW DC, including revoking their ordinations and terminating any and all association with ARW National and ARW DC,

14

including any purported right to control or retain assets owned and held by ARW National or ARW DC.

78.     Despite the numerous notices, letters, demands, and the formal termination of all rights by ARW National and ARW DC, on January 22, 2024, Byron Martin and Shahrzad Martin – in conjunction with a group of illegitimate purported board members (Dyson, Martin, Jr., Nottingham, and Rawlings) – executed and recorded a General Warranty Deed, transferring the North Carolina Property from ARW DC to Glory Mountain Ministries.

79.     In this General Warranty Deed, which is signed by each of the individual Defendants, in their purported capacities as board members for ARW DC, despite the clear evidence of their having abandoned those positions through their failure to act in the interests of ARW DC and despite their removal after not having been re-appointed during ARW DC's corporate revival process, numerous issues and concerns emerge.  The North Carolina Property – totaling 590 acres – was transferred for no consideration and was, instead, listed as a gift to Glory Mountain Ministries (despite the General Warranty Deed's reference to "valuable consideration"). The General Warranty Deed also seemingly attempts to distance the Defendants from the recent notices and demands – stating, without any proof, basis, or evidence – that this illegitimate board for ARW DC unanimously passed a resolution agreeing to transfer the real property to Glory Mountain Ministries on August 6, 2019 – more than four (4) years prior to the recordation of this General Warranty Deed.   Notably, no such resolution was ever communicated or conveyed to ARW National over the intervening four years.

80.     The attempted backdating of the purported August 6, 2019 ARW DC resolution is even more concerning and questionable, given that, on July 29, 2019, due to failures and omissions by both Byron Martin and Shahrazad Martin, ARW DC was administratively

15

dissolved – which limited ARW DC's ability to dispose of and/or transfer any such property, including the North Carolina Property. In any event, any authority was subsequently and separately terminated by the December 22, 2023 resolution of ARW National.

81.    By their actions, Byron Martin and Shahrazad Martin deprived ARW DC and ARW National of assets, including, but not limited to, the North Carolina Property and, to all appearances, appropriated them for themselves and Glory Mountain Ministries in violation of ARW National and ARW DC's governing documents, the corporate documents, and the D.C. Nonprofit Corporation Act of 2010, as amended.

82.    ARW National and ARW DC have been forced to file the instant lawsuit to protect ARW DC's assets, including its ownership and control of the North Carolina Property.

83.    Byron Martin, Shahrzad Martin, and Glory Mountain Ministries are impermissibly operating Glory Mountain Ministries from the North Carolina Property, which rightfully belongs to ARW DC.

84.    The operation of Glory Mountain Ministries at the North Carolina Property and any disposition of the North Carolina Property by Glory Mountain Ministries, Byron Martin, or Shahrazad Martin deprives ARW DC of use of the property and the property's value.

85.    These actions are inconsistent with ARW National and ARW DC's governing documents.

86.    Through counsel, ARW National and ARW DC placed Byron Martin and Shahrazad Martin on notice that the transfer of the North Carolina Property to Glory Mountain Ministries was *ultra vires*, as all purported signors lacked authority to convey, encumber, or dispose of any ARW DC assets, including the North Carolina Property. Indeed, Byron Martin and Shahrazad Martin lacked and presently lack any capacity to take any action on behalf of ARW DC

16

given the termination of their respective ordinations and commissions by ARW National and ARW DC.

## CLAIMS FOR RELIEF

### COUNT I
### (Declaratory And Injunctive Relief Against All Defendants)

87.     Plaintiffs reallege and incorporate by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

88.     ARW National and ARW DC are entitled to a declaration that none of the defendants have a right or claim to control ARW DC.

89.     ARW National and ARW DC are entitled to a declaration that Glory Mountain Ministries, Byron Martin, and Shahrzad Martin have no right or claim to either the North Carolina Property or any other asset of ARW DC.

90.     ARW National and ARW DC have a direct, substantial, and present interest in control of ARW DC, its assets, and in preventing any unauthorized use, waste or disposition of ARW National and ARW DC assets, including the North Carolina Property.

91.     An actual and justiciable controversy exists over whether Defendants may act on behalf of ARW DC and hold themselves out as directors or officers of ARW DC.

92.     An actual and justiciable controversy exists between Plaintiffs and Defendants over competing and antagonistic ownership claims in the North Carolina Property and other ARW DC assets, including the unauthorized possession and use of the North Carolina Property by Glory Mountain Ministries, Byron Martin, and Shahrzad Martin.

93.     The controversy is of sufficient immediacy to justify the issuance of declaratory relief by this Court.

17

94. Glory Mountain Ministries, Byron Martin, and Shahrzad Martin have purported to fraudulently convey the North Carolina Property, refusing to recognize and honor ARW National and ARW DC's ownership interests therein, and instead are operating a competing religious institution wholly unaffiliated with ARW National and ARW DC.

95. A ruling by this Court will resolve all contested issues involving the control of ARW DC and the ownership in ARW DC's assets, including the North Carolina Property, thereby ending the controversy among the parties.

96. Plaintiffs are likely to succeed on the merits of their claim for declaratory judgment and are likely to suffer irreparable harm in the absence of preliminary and permanent injunctive relief. Plaintiffs' remedies at law are inadequate, the balance of the hardships and the equities tips in Plaintiffs' favor, and an injunction preventing any transfer of an ARW DC asset to a third party, including but not limited to the North Carolina Property, is in the public interest.

97. Accordingly, Plaintiffs are entitled to a declaration that Defendants have no rights to control ARW DC and no rights to any ARW DC property or assets, including the North Carolina Property, and Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Defendants from taking any action to transfer any ARW DC property or asset.

## COUNT II
### (Conversion Against All Defendants)

98. Plaintiffs reallege and incorporate by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

99. Defendants abandoned their respective positions at ARW DC when they individually and collectively permitted ARW DC's corporate status to lapse.

100. Defendants were not re-appointed as officers of ARW DC when it was reinstated to active status.

18

101. Furthermore, Byron Martin and Shahrzad Martin were officially terminated by ARW National and ARW DC, such that any authority they ever possessed by ordination and commission to act on behalf of ARW DC was revoked.

102. Nonetheless, Defendants have wrongfully, unlawfully, and without authorization, assumed and exercised ownership over Plaintiffs' assets, including the North Carolina Property, bank accounts, and certain other amounts and proceeds, to the exclusion of Plaintiffs' rights.

103. Defendants have assumed and exercised, in an unauthorized manner, ownership over Plaintiffs' financial assets and other property.

104. Plaintiffs possess an ownership interest in the sums associated with these financial assets as well as other property.

105. Defendants' control and possession over these assets and the other property has excluded and prejudiced Plaintiffs' rights thereto.

106. Defendants' control and possession over the sums associated with these financial assets and the other property represents a conversion.

107. Defendants should be equitably estopped from benefiting from their conversion because, among other things, they intentionally concealed from Plaintiffs their use of Plaintiffs' assets for their own benefit and prevented and frustrated them from discovering the extent of their actions.

108. Plaintiffs have been damaged as a proximate cause of Defendants' conversion of the sums associated with Plaintiffs' property and assets.

109.    Plaintiffs are entitled to judgment against Defendants in an amount equal to the value associated with these financial assets and the other property converted, plus interest, and such other amounts as will be proven as a result of Defendants' conversion.

## COUNT III
### (Fraudulent Conveyance/Voidable Conveyance Against All Defendants)

110.    Plaintiffs reallege and incorporate by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

111.    The General Warranty Deed, wherein Defendants purported to transfer the North Carolina Property to Glory Mountain Ministries, is void as to Plaintiffs and was fraudulently conveyed to Glory Mountain Ministries in an attempt to frustrate Plaintiffs and/or cloud title as to ownership of the North Carolina Property.

112.    The General Warranty Deed indicates no excise tax was paid on the transfer of the North Carolina Property.

113.    Upon information and belief, the transfer of the North Carolina Property was made without consideration.

114.    The North Carolina Property is rightfully owned by ARW DC and Defendants transferred the North Carolina Property without any consent or authorization from Plaintiffs.

115.    Plaintiffs are entitled to judgment against Defendants that the General Warranty Deed for the North Carolina Property is void and of no effect, or otherwise rescinding the General Warranty Deed.

20

## COUNT IV
## (Unjust Enrichment Against All Defendants)

116.    Plaintiffs re-allege and incorporate by reference all the allegations in the preceding paragraphs as if fully set forth herein.

117.    Defendants wrongfully, unlawfully, and without authorization, took ownership and control over Plaintiffs' financial assets, including, but not limited to the North Carolina Property, to the exclusion of Plaintiffs' rights.

118.    As a result of these actions, Defendants have unfairly and unjustly benefitted from the taking of Plaintiffs' assets.

119.    If Defendants are not required to return the unfairly and unjustly taken assets acquired from the Plaintiffs, they will be unjustly enriched.

120.    Defendants, in equity and good conscience, should be compelled to disgorge all funds associated with Plaintiffs' financial assets and other property which improperly accrued to them and by which they have been unjustly enriched.

121.    Plaintiffs are entitled to judgment against Defendants in an amount equal to the value associated with the financial assets and the other property that Defendants took without proper authorization and therefore by which they were unjustly enriched.

## COUNT V
## (Quiet Title Against Glory Mountain Ministries)

122.    Plaintiffs reallege and incorporate by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

123.    ARW DC is the rightful, legal owner of the North Carolina Property.

21

124.    ARW DC did not authorize Defendants to transfer, sale, dispose, and/or encumber the North Carolina Property. In fact, on December 22, 2023, ARW DC and ARW National expressly prohibited the transfer of the North Carolina Property.

125.    Defendants, without authorization from ARW DC or ARW National and contrary to the explicit prohibition, illegally and invalidly purported to transfer the North Carolina Property to Glory Mountain Ministries.  Indeed, Byron Martin and Shahrzad Martin undertook their fraudulent conveyance of the North Carolina Property after receiving terminations of their ordinations and commissions from ARW DC and ARW National and after being advised of ARW DC and ARW National's prohibition on transferring the North Carolina Property.

126.    To the extent Defendant Glory Mountain Ministries asserts it holds an ownership interest in the North Carolina Property, Plaintiffs bring this claim for relief requesting that the Court resolve the ownership dispute between the Parties and quiet title to any disputed portion of the North Carolina Property in favor of ARW DC and ARW National.

## COUNT VI
## (Trespass Against B. Martin, S. Martin, and Glory Mountain Ministries)

127.    Plaintiffs reallege and incorporate by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

128.    Defendants Byron Martin, Shahrzad Martin, and Glory Mountain Ministries, without authorization from Plaintiffs and despite repeated notices and demands to vacate the North Carolina Property, unlawfully trespassed onto and over the North Carolina Property, including operating Glory Mountain Ministries, in part or in whole, from the North Carolina Property.

129.    Defendants Byron Martin, Shahrzad Martin, and Glory Mountain Ministries unlawful use of the North Carolina Property constitutes a continuing trespass.

130.     Defendants Byron Martin, Shahrzad Martin, and Glory Mountain Ministries continued unlawful use of the North Carolina Property has caused monetary damage to the Plaintiffs, including the costs of this action and impairment of the marketability and value of the North Carolina Property.

131.     Defendants Byron Martin, Shahrzad Martin, and Glory Mountain Ministries are not public authorities clothed with the power of eminent domain.

132.     Plaintiffs are entitled to recover all monetary damages Plaintiff has or will incur as a result of Defendants' unlawful and continuing trespass on the North Carolina Property in an amount to be determined.

133.     Plaintiffs are entitled to a mandatory permanent injunction requiring Defendants Byron Martin, Shahrzad Martin, and Glory Mountain Ministries to vacate the North Carolina Property and remove any and all encroaching and/or encumbering structures from the North Carolina Property.

**COUNT VII**
**(Accounting Against All Defendants)**

134.     Plaintiffs reallege and incorporate by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

135.     Upon information and belief, the Defendants have wrongfully misappropriated, transferred and/or disposed of assets owned by ARW National and ARW DC, without the knowledge or consent of the Plaintiffs.

136.     In so doing, Defendants have wrongfully converted certain ARW National and ARW DC assets and any property thereof to the detriment of the Plaintiffs and have knowingly and intentionally misappropriated, diverted, spent, transferred, or secreted the proceeds of any such assets.

23

137.     Plaintiffs are entitled to an order compelling Defendants and their respective officers, directors, managers, members, and employees to account to Plaintiffs and this Court for any asset sales and transfer proceeds for assets belonging to and owned by ARW National and ARW DC, and to immediately provide to Plaintiffs all documents and records relating thereto including, but not limited to, all contracts, agreements, retail installment contracts, financing agreements, purchase orders, sales invoices, trade-ins, written or electronic communications between Defendants and any purchasers or their lenders, all bank account records from all banks where proceeds were deposited including deposit slips, statements, copies of deposited items and paid items and all documents related to all electronic deposits and transfers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray unto the Court that:

1.     Judgment be entered in Plaintiffs' favor on all claims;

2.     The Court require a full, accurate, and detailed accounting from Defendants regarding ARW National and ARW DC assets over which Defendants had or exercised control over for the period of January 2016 to the present;

3.     The Court enter preliminary and permanent injunctive relief enjoining Defendants from taking any action to transfer any ARW National or ARW DC property or asset;

4.     The Court declare that the Defendants have no right or claim to control of American Rescue Workers, Inc., a nonprofit corporation in the District of Columbia, the North Carolina Property, or any other asset of American Rescue Workers, Inc., a nonprofit corporation in the District of Columbia;

5.     The Court declare that American Rescue Workers, Inc., a nonprofit corporation in the District of Columbia, owns the North Carolina Property;

6. The Court declare that American Rescue Workers, Inc., a nonprofit corporation in the District of Columbia, is entitled to immediate possession of the North Carolina Property, free and clear of any interference of the Defendants, including voiding, rescinding, and/or unwinding the purported transfer of the North Carolina Property to Glory Mountain Ministries;

7. Plaintiffs receive damages associated with Defendants unlawful and wrongful taking of Plaintiffs' assets and other property for their benefit as determined by a finder of facts, plus interest;

8. The Court require that the financial assets and other property that Defendants wrongfully took from the Plaintiffs be returned to Plaintiffs;

9. Plaintiffs have and recover from the Defendants an award of their reasonable attorneys' fees;

10. The costs of this action be taxed against the Defendants;

11. Plaintiffs have a trial by jury on all issues of fact so triable; and

12. Plaintiffs have and recover such other and further relief as the Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Respectfully submitted this the 3rd day of May, 2024.

/s/ *Clinton H. Cogburn*
William S. Durr
N.C. State Bar I.D. No.:**030087**
email: docket@wardandsmith.com
email: wsd@wardandsmith.com
Clinton H. Cogburn
N.C. State Bar I.D. No.: 50628
email: chcogburn@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC 28802-2020
Telephone: 828.348.6070
Facsimile: 828.348.6077


Walter J. Buzzetta, Esq.*
Adam M. Kaplan, Esq.*
Stradley Ronon Stevens & Young, LLP
2000 K Street, NW, Suite 700
Washington, DC 20006
T: (202) 507-6407
F: (202) 822-0140
email: wbuzzetta@stradley.com
email: akaplan@stradley.com

*Pro Hac Vice Applications Forthcoming*

*Attorneys for Plaintiffs American Rescue Workers,*
*Inc. and American Rescue Workers*

26

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I solemnly affirm under the penalties of perjury and upon

personal knowledge that the facts contained in the foregoing paper are true and correct.

Executed on April 23, 2024.

_Dawn R. Astin_

Dawn Astin
President, National / General Conference Board of Managers
American Rescue Workers, Inc.